# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES RAYNOR and JAMES MITCHELL,
  *Plaintiffs,*

  v.

MALDONADO *et al.,*
  *Defendants.*

:
:
:
:
:
:
:
:

No. 3:24-cv-1221 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiffs James Raynor and James Mitchell primarily claim that prison officials used excessive force by handcuffing them behind their back for an extended period of time during the course of a search of the facility for contraband. On the basis of my initial review of the complaint pursuant to 28 U.S.C. § 1915A, I will allow two of Raynor's claims to proceed against one defendant but will dismiss all of the remaining federal law claims.

### BACKGROUND

Raynor and Mitchell were sentenced prisoners at the Garner Correctional Institution in Connecticut. They have filed this lawsuit against two Garner officials—Lieutenant McGaunclin and Warden Maldonado.

According to their complaint, there was a "facilities search" (or "shakedown") of prisoner cells at Garner for contraband that took place on February 20, 2024. While this search was ongoing, both Raynor and Mitchell were restrained in handcuffs in a day room outside their cells for about two to three hours.

Raynor and Mitchell have filed two separate statements that set forth their individual versions of what happened.[1] According to Raynor, he was forced to wear handcuffs behind his back despite the fact that he asked the officer who applied the handcuffs if he could wear the handcuffs in front of him because of a prior injury to and surgery on his right arm. The officer was willing to handcuff him in front as Raynor requested, but Lt. McGlaunclin intervened and insisted as a matter of prison policy that Raynor be handcuffed behind his back and despite Raynor's complaint that this would hurt and injure him. Lt. McGlaunclin pulled out a second set of handcuffs and proposed to attach two sets of handcuffs together (presumably allowing for freer arm movement), but Raynor explained that this would not prevent pain or injury.

Raynor was handcuffed behind his back, and he was taken and remained with some other handcuffed prisoners in a day room while the facilities search progressed. While in the day room, Raynor noticed that at least one other inmate was handcuffed in front. Raynor remained handcuffed behind his back for nearly two hours and was in severe pain about which he complained to the officer who was monitoring the day room.

In the meantime, Lt. McGlaunclin was taking part in the facilities search of prisoner cells, and he did not return to the day room to check on Raynor. Eventually, another senior officer arrived and allowed Raynor's handcuffs to be switched from behind to the front.

After the facilities search concluded, Raynor returned to his cell where he continued to be in pain and asked for medical assistance. Lt. McGlaunclin eventually came to his cell and told

---

[1] Doc. #1 at 10-17 (Raynor statement); *id.* at 25-30 (Mitchell statement).

him he would have medical staff come to see Raynor. When a nurse later arrived, Raynor reported how he felt sharp pain. A later medical evaluation confirmed that the handcuffing had acutely exacerbated his arm injury.

For his part, Mitchell alleges similar facts as Raynor—that he was handcuffed behind his back and made to wait in the day room for about three hours—but with some differences. Unlike Raynor, Mitchell does not allege that he had a pre-existing arm injury or that he made any request at the inception not to be handcuffed behind his back.

Nor does Mitchell allege that he interacted with Lt. McGlaunclin before or while he was handcuffed. According to Mitchell, after the facilities search was completed and after he returned to his cell, he complained to Lt. McGlaunclin that he would file a report for abuse and excessive force, and Lt. McGlaunclin responded to the effect of "why didn't you say something" at the time.

Neither Raynor nor Mitchell allege that they had any interaction with Warden Maldonado on the day that they were handcuffed. But they allege that it was Warden Maldonado who ordered the use of handcuffs during the facility search, although they do not allege that Warden Maldonado specifically ordered or required prisoners to be handcuffed behind their back. They also allege that there is no Department of Correction (DOC) administrative directive that authorizes the handcuffing of prisoners during facility searches and that Warden Maldonado knew that other DOC facilities do not handcuff prisoners during facility searches.

Raynor and Mitchell allege that Lieutenant McGaunclin and Warden Jenette Maldonado were deliberately indifferent to their health and safety, used excessive force, violated due process, and denied them the right of equal protection of the law. They allege violations of the

First, Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution.[2]

## DISCUSSION

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When a court conducts an initial review of a prisoner complaint pursuant to 28 U.S.C. §1915A, it must accept the well-pleaded facts of the complaint as true and draw all reasonable inferences in favor of the prisoner. *See Harnage v. Lightner*, 916 F.3d 138, 140 (2d Cir. 2019). On the other hand, a court is not required to credit allegations of the complaint that are conclusory or that constitute legal conclusions couched as historical fact. *See Lopez v. Annucci*, 690 F. App'x 56, 58 (2d Cir. 2017).

If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963

---

[2] The plaintiffs also allege violations of the state constitution and state law, but I will limit my review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then I would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367; *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165-66 (D. Conn. 2005). On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment after any remaining defendants have been served with and responded to the complaint.

F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid.*[3]

### Eighth Amendment excessive force

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. This includes the right to be free from the use of excessive force. *See Hudson v. McMillian*, 503 U.S. 1 (1992).

In order to sustain a claim for the use of excessive force in violation of the Eighth Amendment, a prisoner must make two showings. First, they must show that they were subject to a level of force that is "sufficiently serious to reach constitutional dimensions." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). This inquiry turns on the nature of the force rather than the extent of the injury, and a prisoner need not show that he suffered more than a *de minimis* injury from the use of force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (*per curiam*); *Harris v. Miller*, 818 F.3d 49, 64-65 (2d Cir. 2016) (*per curiam*).

Second, a prisoner must show that the defendant acted with a culpable state of mind. Specifically, a prisoner must show that the defendant acted wantonly by virtue of using force maliciously or sadistically rather than for good faith reasons of maintaining discipline or security. *See Wilkins*, 559 U.S. at 40; *Harris*, 818 F.3d at 63.

Courts occasionally address prisoner claims of excessive force arising from the use of handcuffs or other physical restraints at prison facilities. So far I am aware, no courts have ruled that—standing alone—the mere use of handcuffs on a prisoner at a prison facility amounts to a

---

[3] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*per se* use of excessive force.[4] Instead, those courts that evaluate such claims have focused on whether the handcuffs were applied in a manner likely to cause pain or injury and whether they were used for wanton reasons, rather than to maintain institutional discipline or security. *See Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (court must consider not only "the use of handcuffs" but also "their deliberate and improperly motivated application so tightly as to injure"); *Gawlik v. Semple*, 2021 WL 4430601, at *10 (D. Conn. 2021) (despite "relatively minor injuries from the application of the handcuffs," the defendants "tightened the cuffs and twisted his wrist into an extremely painful position that left [the plaintiff] afraid his wrists would break," such that the plaintiff "has set forth sufficient allegations to state a cognizable Eighth Amendment claim for excessive use of force"); *Casaburro v. Giuliani*, 986 F. Supp. 176, 181 (S.D.N.Y. 1997) ("the need to handcuff Plaintiff while he was in a holding cell is not yet apparent, much less the need to handcuff him tightly for over seven hours").

A prison official may be liable for the use of excessive force not only if they personally order or apply excessive force themselves, but also if they fail to intervene to stop the excessive use of force by others if they were in a position to observe the conduct and had time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019). By contrast, a prison official is not liable if they were not personally involved with the use of excessive force. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023).

---

[4] The plaintiffs allege that there is no administrative directive of the Department of Correction that allows for or authorizes the use of handcuffs during a facility search. Doc. #1 at 15 (¶¶ 29-30); *id.* at 27 (¶ 15). But this allegation is of limited relevance because the violation of the terms of an administrative directive does not mean that prison officials have violated the Constitution. *See, e.g., Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011).

The fact that a prison official has a supervisory title or role at a prison does not automatically mean that the official was personally involved with or is liable for any misconduct by lower-level officers. There is no "special rule for supervisory liability," and "a plaintiff must plead and prove that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added).

In light of these standards, I conclude that Raynor has alleged a plausible claim for the use of excessive force by Lt. McGlauclin. First, he alleges a use of force that was sufficiently serious: that Lt. McGlauclin required Raynor to be handcuffed behind his back and despite Raynor's plea and warning that this would be painful and injure him.

Second, he alleges enough facts for an inference to be drawn that Lt. McGlauclin acted with a sufficiently culpable state of mind. Viewing the allegations of the complaint in the light most favorable to Raynor, there is no apparent institutional security reason why a prisoner who raises a specific concern that he would suffer pain and injury if handcuffed behind the back must still be required to be handcuffed behind the back rather than handcuffed in front or restrained in some other way. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may ... be sufficient evidence of a culpable state of mind." *Hogan*, 738 F.3d at 516.[5]

---

[5] To be sure, there are other facts alleged in the complaint that tend to suggest that Lt. McGlauclin did not harbor any malicious, sadistic, or bad faith reasons. For example, he tried to address Raynor's concerns by using a second set of handcuffs that presumably would have allowed for Raynor to engage in a freer range of movement than if only one set of handcuffs was used.

On the other hand, the second plaintiff—Mitchell—has not alleged a plausible excessive force claim against Lt. McGlaunclin. Unlike Raynor, Mitchell does not allege that Lt. McGlaunclin ordered him to be handcuffed. Mitchell does not allege that he had any interactions with Lt. McGlaunclin until after the handcuffs were already removed and when Mitchell was back in his cell. Therefore, Mitchell has not alleged facts to plausibly suggest Lt. McGlaunclin's personal involvement in any deprivation of Mitchell's rights. Moreover, unlike Raynor, Mitchell does not allege that he had a prior injury or that Lt. McGlaunclin had any reason to believe that Mitchell would suffer pain or injury if he were subject to handcuffing behind the back. Thus, Mitchell has not alleged facts to plausibly suggest that Lt. McGlaunclin acted with a culpable state of mind to cause pain or injury to Mitchell.

Nor do the plaintiffs allege a plausible excessive force claim against Warden Maldonado. They allege in somewhat conclusory terms that the warden ordered the handcuffing of prisoners during the course of the facility search, but they do not further allege that the warden's order specifically required handcuffing behind the back (rather than in front) or handcuffing in any other excessive manner that would cause pain or injury.[6] They do not allege that the warden was present when they were handcuffed or had any other reason to believe that temporary handcuffing of them or other prisoners during the course of a facility search would cause pain or injury.

---

[6] Doc. #1 at 17 (¶ 39, 42) (allegations by Raynor that the warden "ordered the use of excessive for[ce] …. when her staff placed [inmates] in restraints during a unit shake down" and despite being "aware that no other CT facility use[s] force via restraints during facility shakedowns"); *id.* at 28 (¶¶ 20, 21) (allegations by Mitchell that the warden used excessive force "by ordering restraints be used during a unit search" and that no other facilities "authorize use of force via restraints during facility shakedowns").

In short, I will allow Raynor to proceed with his Eighth Amendment excessive force claim against Lt. McGlaunclin. On the other hand, I will dismiss the remainder of the plaintiffs' claims for Eighth Amendment excessive force.

### Eighth Amendment deliberate indifference to health and safety

The Eighth Amendment protects prisoners not only from the use of excessive force by prison officials but also—more generally—from acts of prison officials that are deliberately indifferent to their health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *see also Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (explaining distinctions between excessive force and deliberate indifference claims).

 A claim for deliberate indifference under the Eighth Amendment has both an objective and a subjective component. *See Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). First, a prisoner must show that the defendant prison official subjected the prisoner to a type of deprivation that from an objective standpoint was sufficiently serious to implicate the prisoner's rights under the Constitution. *Ibid.* Second, a prisoner must show that the defendant prison official acted with a subjectively culpable state of mind—such that the official actually knew of and disregarded an excessive risk to inmate health or safety. *Ibid.* Mere negligence of a prison official is not enough to sustain an Eighth Amendment claim for deliberate indifference to a prisoner's health or safety. *Ibid.*

In light of these standards, I conclude that Raynor has alleged a plausible deliberate indifference claim against Lt. McGlaunclin. As to the objective component, he alleges that he suffered significant pain and injury from being required to wear the handcuffs behind his back for an extended period of time. As to the subjective component, he alleges telling Lt.

McGlaunclin of his risk of pain and injury but that Lt. McGlaunclin refused his request not to be handcuffed behind the back. Viewing the facts in the light most favorable to Raynor at this initial pleading stage, they are enough to plausibly suggest that Lt. McGlaunclin was not merely negligent but that he was deliberately indifferent to Raynor's health and safety.

On the other hand, Mitchell has not alleged a plausible deliberate indifference claim against Lt. McGlaunclin. For the same reasons I have set forth above, he has not alleged facts to show that Lt. McGlaunclin was personally involved with the handcuffing of Mitchell, and he has not alleged facts to show that Lt. McGlaunclin acted with knowledge or disregard of any risk of pain or injury to Mitchell.

Nor as to Warden Maldonado have the plaintiffs alleged enough facts to support an Eighth Amendment deliberate indifference claim. Even crediting the allegations of pain and injury that was objectively serious, the plaintiffs do not allege facts to suggest that the warden was no less than deliberately indifferent to such harm. They do not allege that the warden was present when they were handcuffed or had any other reason to believe that handcuffing would cause them pain or injury.

To the extent that the plaintiffs allege that the warden ordered all of Garner's prisoners to be handcuffed during the course of the facility search, they do not allege that the warden's order required prisoners to be handcuffed behind their back or to have handcuffs applied in any other painful or injurious manner. If the warden simply ordered that all prisoners be handcuffed or restrained in some manner during the course of the facilities search, this is not enough on its own to suggest that the warden was deliberately indifferent to whether handcuffing would cause pain or injury.

In short, I will allow Raynor to proceed with his Eighth Amendment deliberate indifference claim against Lt. McGlaunclin. On the other hand, I will dismiss the remainder of the plaintiffs' claims for Eighth Amendment deliberate indifference.

### First Amendment

The First Amendment protects the right to free speech and association. U.S. Const. amend I. Prison officials may not retaliate against a prisoner because of the prisoner's exercise of rights to free speech or association under the First Amendment. *See Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020). But here the complaint does not allege any facts to suggest that the plaintiffs were handcuffed in order to retaliate against them for their exercise of First Amendment rights. Accordingly, I will dismiss the plaintiffs' First Amendment claims.

### Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Fourth Amendment is violated if the police use excessive force on a free person in the course of an arrest or other law enforcement action. *See Graham v. Connor*, 490 U.S. 386 (1989). On the other hand, the constitutionality of the use of force by prison officials against a sentenced prisoner is governed by the Eighth Amendment rather than the Fourth Amendment. *See id.* at 395 n.10; *see also Bonilla v. Jaronczyk*, 354 F. App'x 579, 581 (2d Cir. 2009). Accordingly, because the plaintiffs' allegations are subject to review under the Eighth Amendment, I will dismiss the plaintiffs' Fourth Amendment claims.

### *Fourteenth Amendment due process*

The Fourteenth Amendment provides in part that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. The right to due process includes both a right to "substantive" due process and to "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

Substantive due process generally protects against the government's deprivation of a life, liberty, or property interest in an arbitrary manner or "without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 846. But in the context of claims raised by a convicted prisoner against the excessive use of force by prison officials, substantive due process under the Fourteenth Amendment affords no greater protection than the protections of the Eighth Amendment. *See Graham*, 490 U.S. at 395 n.10. "Where a specific constitutional provision prohibits government action, . . . a plaintiff's substantive due process claim is either subsumed in his more particularized allegations, or must fail." *Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020). Accordingly, I will dismiss the plaintiffs' substantive due process claim as duplicative of their Eighth Amendment excessive force claim.

Procedural due process protects the right of a person to receive a fair procedure in connection with a deprivation by the government of a life, liberty, or property interest. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (*per curiam*). A court must "first ask[] whether there exists a liberty or property interest which has been interfered with by the State; [and] second examine[] whether the procedures attendant upon that deprivation were constitutionally sufficient." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019).

12

Because a prisoner's liberty interests are already subject to general restriction by the fact of their incarceration, when a prisoner seeks to raise a due process challenge to a particular adverse act or policy that has occurs at the prison, the prisoner must show that the adverse action has imposed no less than an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Applying this atypical-and-significant-hardship standard, courts have rightly rejected prisoner claims that they have been deprived of a liberty interest by being subject to the use of temporary restraints or handcuffs. *See, e.g., Ruggiero v. Fischer*, 807 F. App'x 70 (2d Cir. 2020) (handcuffs and waist chain for one-hour out-of-cell exercise period); *Shand v. Chapdelaine*, 2018 WL 279980, at *4 (D. Conn. 2018) (three days of in-cell restraints). Moreover, even assuming the deprivation of a liberty interest, the plaintiffs do not allege that the defendants should have afforded them a hearing or any other protective procedures prior to subjecting them to handcuffing. Accordingly, I will dismiss the plaintiffs' procedural due process claim.

### Fourteenth Amendment equal protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (internal quotations omitted).

The plaintiffs do not allege facts to show that Lt. McGlaunclin intentionally or purposefully treated them differently from other prisoners. According to the complaint, Lt. McGlaunclin cited a prison policy that required Raynor—like all other prisoners—to be

13

handcuffed behind his back.[7] Thus, a fair reading of the complaint is that Lt. McGlaunclin intended to treat all prisoners the same, not differently.

To be sure, the complaint goes on to allege there were one or more prisoners who were allowed to wear handcuffs in front rather than behind.[8] But the complaint does not allege that it was Lt. McGlaunclin who ordered or intended this differential treatment. Indeed, the complaint faults Lt. McGlaunclin for taking part in the search of prisoner cells and without taking time to check on the handcuffed prisoners in the day room.[9] This allegation suggests that Lt. McGlaunclin was not even aware of any difference in treatment among prisoners with respect to who wore handcuffs behind them and who wore handcuffs in front.

The plaintiffs similarly fail to allege facts to show that Warden Maldonado engaged in any intentional or purposeful discrimination with respect to the handcuffing of the plaintiffs and other prisoners. First, to the extent that the plaintiffs complain that they had to wear handcuffs behind them while other prisoners at Garner were allowed to wear handcuffs in front, they do not allege facts to show that the warden ordered or even knew of such differential treatment between prisoners at Garner. Second, to the extent that the plaintiffs complain more broadly that only Garner prisoners are subject to handcuffing during a facility search while prisoners at other

---

[7] Doc. #1 at 11 (¶ 8).
[8] Doc. #1 at 13 (¶ 19) (alleging that Raynor complained after the fact that there "was another inmate handcuffed in the front instead of the back"); *id.* at 16 (¶ 36) (alleging that Raynor "observed for himself another prisoner was cuffed in the front and subsequently learned that multiple inmates were cuffed in the front rather than behind the back"); *ibid.* (¶ 38) (alleging that "as the shake down went on [Raynor] continued to observe other inmates being handcuff[ed] in the front which contradicts what the defendant supervisor Lt. McGaunclin explained to him about prison policy that he had to be handcuffed behind his back").
[9] *Id.* at 12 (¶ 13); *id.* at 25 (¶ 6).

Connecticut prisons are not subject to such restraints, the plaintiffs do not allege facts to suggest that the warden exercised any control over other prison facilities.

Therefore, even assuming any intra-facility or inter-facility differences in treatment among prisoners with respect to handcuffing during the course of facility searches, the plaintiffs have not alleged facts to show that this difference in treatment was because of intentional or purposeful discrimination by Warden Maldonado. Accordingly, I will dismiss the plaintiffs' equal protection claims.

### *Injunctive relief*

The plaintiffs seek injunctive relief as well as an award of money damages. But because the plaintiffs are no longer at Garner, any claim for injunctive relief is moot with respect to prison officials like Lt. McClaunclin and Warden Maldonado who no longer have control over the conditions of the plaintiffs' confinement. *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020). Accordingly, I will dismiss the plaintiffs' claims for injunctive relief.

### CONCLUSION

Based on the Court's initial review pursuant to 28 U.S.C. § 1915A(b)(1), the Court enters the following orders:

1. This action may proceed solely with respect to plaintiff Raynor's Eighth Amendment claims for the use of excessive force and for deliberate indifference against defendant Lt. McGlaunclin. The Court DISMISSES all other claims and all other defendants.

2. The plaintiffs may file an amended complaint within 30 days of this order if they have good faith grounds to allege additional facts that overcome the grounds stated in this ruling for

dismissing claims.

3. Within 21 days of this order, the Clerk of Court shall ascertain the current work addresses for the defendant and mail a waiver of service of process request packet to him in his individual capacity at his current work address. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

4. The defendant shall file any answer or other response to the complaint within 60 days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

5. This initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the right of any defendant to seek relief by way of any motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

6. The parties shall complete all discovery within six months of this order and file any summary judgment motions within seven months of this order.

7. If plaintiff Raynor changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Raynor must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

8. Raynor shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As

16

discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 21st day of October 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

17